**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JASUR YAKUBOV<br><br>        Plaintiff(s)<br><br>            v.<br><br>BALANCED HEALTHCARE<br>RECEIVABLES, LLC d/b/a Financial<br>Recoveries; and DOES 1 through 10,<br>inclusive,<br><br>        Defendant(s) | Civil Action No.<br><br>Jury Trial Demanded |

Jasur Yakubov ("Plaintiff"), on behalf of himself individually, alleges as follows:

## I.    INTRODUCTION

1.      This is an action for damages brought by a consumer pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

2.      In effectuating the FDCPA, Congress sought to limit the tactics a debt collector could use.  Despite these plain truths, Defendant (as defined herein) used inappropriate tactics to collect Plaintiff's debt.

3.      Upon information and belief, Defendant used these very same tactics across the Commonwealth of Pennsylvania against hundreds, if not thousands, of individuals who, fall within the ambit of the protections of the FDCPA.

4.      Absent this action, Defendant's inappropriate tactics would continue unabated.

## II.    THE PARTIES

5.      Plaintiff is an adult individual citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Philadelphia County.

1

6.      Plaintiff is a "consumer," as that term is defined and/or contemplated within the scope of FDCPA.

7.      Balanced Healthcare Receivables, LLC ("Defendant") is a commercial entity that regularly conducts business within the territory of the Eastern District of Pennsylvania, is engaged in the business of debt collection within the Commonwealth of Pennsylvania from a business location at 164 Burke Street, Suite 201 Nashua, NH 03060.

8.      For example, as visible below, Defendant's own website proclaims that Defendant is a "third-party healthcare specific professional debt collection agency:"



See https://www.bhrllc.com/bhr/ (last visited on January 27, 2022).

9.      Plaintiff is unaware of the names and capacities of those defendants sued as DOES 1 through 10, but will seek leave to amend this complaint once their identities become known to Plaintiff.  Upon information and belief, Plaintiff alleges that at all relevant times each defendant, including the DOE defendants 1 through 10, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants, and in engaging in the conduct alleged herein was in the course and scope of and in furtherance of such relationship.

10.    Unless otherwise specified, Plaintiff will refer to all defendants collectively as "Defendant" and each allegation pertains to each Defendant.

11.    Defendant uses instrumentalities of interstate commerce and mail in a business, whose principal purpose is collection of debts and/or regularly collects (or attempts to collect), directly or indirectly, debts owed or due or asserted to be owed or due another.

12.    At all times material hereto, Defendant acted and/or failed to act in person and/or through duly authorized agents, servants, workmen, and/or employees, acting within the scope and course of their authority and/or employment for and/or on behalf of Defendant.

### III.    JURISDICTION AND VENUE

13.    This Honorable Court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1337.

14.    The Eastern District of Pennsylvania is the proper venue for this litigation, because:

   a.    Plaintiff is a resident of the Eastern District of Pennsylvania;

   b.    Defendant's wrongful conduct was directed to and was undertaken within the territory of the Eastern District of Pennsylvania; and

   c.    Defendant conducts a substantial portion of its business within the territory of the Eastern District of Pennsylvania.

### IV.    STATEMENT OF CLAIMS

#### A.    BACKGROUND

15.    On May 1, 2021, Plaintiff was involved in a car accident in the City of Philadelphia that caused Plaintiff to suffer from various physical injuries.

16.    Following the accident, Plaintiff went to the emergency room at Nazareth Hospital ("Nazareth"), where he was evaluated and treated.

17.     These facts were noted in Nazareth's records.

18.     At that time of the accident and at the time of treatment at Nazareth, Plaintiff was covered by a motor vehicle liability policy from Progressive Insurance Company ("Progressive") that provided, *inter alia*, "first party medical benefits."

19.     At that time of the accident and at the time of treatment at Nazareth, the third-party tortfeasor responsible for causing the accident at issue was covered by a motor vehicle liability policy from Geico Indemnity Company that provided, *inter alia*, "liability benefits."

20.     Later that month, Plaintiff received a bill from Academic Emergency Physicians, Inc. ("Provider") for his post-accident visit to Nazareth, dated May 11, 2021, indicating a total outstanding amount of $468.00.[1]

21.     This bill also identified "99284" as the Current Procedural Terminology Manual's "billing code" for Plaintiff's treatment.[2]

22.     On August 23, 2021, Defendant sent a letter to Plaintiff, written on behalf of the Provider, regarding Plaintiff's alleged obligation to pay the Provider an "Account Balance," "Account Due," or "Total Due" of $468.00 for his evaluation and treatment at Nazareth in May of 2021 following his car accident.[3]

---

[1] A true and correct copy of this document (redacted for purposes of privacy) is marked and attached hereto as Exhibit "1."

[2] See Exhibit "1."  The Current Procedural Terminology Manual ("CPT Manual") is a publicly available periodical published by the American Medical Association.  See https://www.ama-assn.org/amaone/cpt-current-procedural-terminology (last visited on January 27, 2022).  It defines medical and surgical procedures performed on patients and their corresponding "billing codes." CPT Manual's code "99284" is used to bill for an "[e]mergency department visit for the evaluation and management of a patient, which requires these 3 key components: A detailed history; A detailed examination; and Medical decision making of moderate complexity."

[3] A true and correct copy of this document (redacted for purposes of privacy) is marked and attached hereto as Exhibit "2."

23.     At the time of Defendant's correspondence, the alleged obligation was in default.

24.     Defendant's correspondence explicitly identified $468.00 as the "Account Balance," "Account Due," or "Total Due."  See Exhibit "2."

25.     Accordingly, Defendant's correspondence explicitly stated and/or otherwise implied that Plaintiff owed the "Account Balance," "Account Due," or "Total Due" and that Defendant was entitled to collect that amount from Plaintiff.  See Exhibit "2."

26.     Indeed, by sending the correspondence at issue, Defendant sought to collect the "Account Balance," "Account Due," or "Total Due" from Plaintiff.

27.     In the Commonwealth of Pennsylvania, the extent of liability for the cost of treatment received for an injury incurred in a motor vehicle accident is limited by the cost containment provisions of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701 et seq.

28.     The specific provision of the MVFRL, in relevant part, declares:

> [a] person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first party medical benefits . . . **shall not require, request or accept payment** for the treatment, accommodation, products or services in excess of . . . 110% of the applicable fee schedule, the recommended fee or the inflation index charge . . . whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less.[4]

29.     This cost containment provision, commonly known as the "Act 6 Reduction," has been interpreted to mean that, "if Medicare makes any payment for a particular service, then

---

[4] 75 Pa.C.S. § 1797(a)(emphasis supplied).

reimbursement for purposes of automobile insurance will be limited to 110% of that amount."[5]

30.    The regulations promulgated under the MVFRL in the Pennsylvania Code provide the following explanation of this directive:

> An insurer shall apply the Medicare payment limitations of Act 6 to provider services covered by bodily injury liability, uninsured and underinsured motorists, first-party medical and extraordinary medical benefits coverages under an automobile insurance policy. . . . If **no portion of the provider's bill is payable under automobile insurance coverage**, the Medicare payment limitations no longer apply and [a] provider may directly bill the insured or other insurance carrier as it has prior to passage of Act 6.[6]

31.    As mandated by the MVFRL, therefore, the "Act 6 Reduction" must be applied for "an injury covered by liability **or** uninsured and underinsured benefits **or** first party medical benefits."[7]

32.    The use of the conjunction "or" in the statute mandates that the MVFRL limitation must be used, so long as any of the various types of insurance benefits remain available and exhaustion or non-existence of one type of benefit (i.e., "first party medical benefits" or "liability") is irrelevant.

33.    To put it another way, unless "liability," "uninsured and underinsured benefits," and "first party medical benefits" are all unavailable, a medical provider "shall not require, request or accept payment" of anything above the "Act 6 Reduction" formula.[8]

34.    In the present case, at the time of his treatment, Plaintiff's "liability," "uninsured

---

[5] Hospital Association of Pennsylvania, Inc. v. Foster, 629 A.2d 1055, 1057-8 (Pa. Cmwlth. 1993); see also Pittsburgh Neurosurgery Associates, Inc. v. Danner, 733 A.2d 1279 (Pa. Super. 1999).

[6] 31 Pa. Code § 69.22(a), (h)(emphasis supplied).

[7] Id.

[8] See Danner, 733 A.2d at 1279-82.

and underinsured benefits," and "first party medical benefits" have not been exhausted.

35.     In fact, to date, some of the benefits identified in Section 1797 have not been exhausted with respect to Plaintiff's car accident.

36.     Yet, the alleged "Account Balance," "Account Due," or "Total Due" that Defendant sought to collect – $468.00 – is the total outstanding balance claimed by the Provider, without application of the Act 6 Reduction.

37.     The actual amount that the Provider is entitled to under the MVFRL is significantly less than the "Account Balance," "Account Due," or "Total Due" stated in Defendant's correspondence.

38.     Specifically, CPT code "99284" was compensable by Medicare in Philadelphia County[9] at the rate of $129.41 in 2021.[10]

39.     In accordance with Section 1797, Plaintiff could not be required to pay more than "110% of the applicable fee schedule, the recommended fee or the inflation index charge . . . whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered."[11]

40.     That amount is $142.35 (i.e., 110% of what Medicare would have paid), which is far less than what Defendant claimed Plaintiff owed.

41.     Indeed, Defendant overstated the amount of Plaintiff's obligation by more than

---

[9] See https://www.cms.gov/files/document/cy2020-locality-key.pdf (last visited on January 27, 2022)(designating "METROPOLITAN PHILADELPHIA" under code "1250201").

[10] See https://www.cms.gov/medicare/physician-fee-schedule/search?Y=1&T=0&HT=0&CT=3&H1=99284&M=5 (last visited on January 27, 2022).

[11] 75 Pa.C.S. § 1797(a); see also Foster, 629 A.2d at 1057-8.

300%.

42.     Neither the Provider nor Defendant even attempted to re-calculate the "Account Balance," "Account Due," or "Total Due" to determine what the Provider may ask for or receive under the MVFRL.

43.     The MVRFL explicitly forbids a Provider and, correspondingly, anyone acting on Provider's behalf, to "require, request or accept payment" of more than what the statute allows.[12]

44.     Section 1692e(2)(A) of the FDCPA specifically prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt. . ."  15 U.S.C. § 1692e(2)(A).

45.     Section 1692e(10) of the FDCPA specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt. . ."  15 U.S.C. § 1692e(10).

46.     Section 1692f(1) of the FDCPA specifically prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

47.     Section 1692g(a)(1) of the FDCPA requires that a debt collector accurately disclose the amount of the debt a consumer allegedly owes.

48.     Sections 1692e(2)(A), 1692e(10), 1692f(1), and 1692g(a)(1) "impose strict liability on debt collectors."[13]

49.     As described herein, Defendant's actions violated the applicable provisions of the

---

[12] 75 Pa.C.S. § 1797(a).

[13] Kaymark v. Bank of America, N.A., 783 F.3d 168, 174 (3rd Cir. 2015)(cleaned up).

FDCPA, in that: (a) Defendant misrepresented that it has complied with the MVFRL, while Defendant did not do so; (b) Defendant explicitly claimed that Plaintiff owed an amount that was in excess of what its client was permitted by law to collect (or even ask for) under the MVFRL; and/or (c) Defendant attempted to collect an amount that was in excess of what its client was permitted by law to collect (or even ask for) under the MVFRL.

50.     It is believed and, therefore, averred that Defendant has no procedures to avoid collecting more than what is permitted under the MVFRL.

51.     Further, upon information and belief, Defendant did nothing to investigate the entities or persons that hired, retained, or engaged Defendant to collect the alleged debt at issue in Plaintiff's Complaint, before first contacting Plaintiff.

52.     Additionally, upon information and belief, Defendant has never made any inquiry or otherwise investigate the legitimacy or accuracy of Plaintiff's alleged debt, before first contacting Plaintiff.

53.     Defendant, therefore, could not have reasonably relied upon the information provided to Defendant about the alleged debt at issue in Plaintiff's Complaint.

54.     Moreover, Defendant's reliance on the information provided by the Provider was not (and could not have been) reasonable or justified, as even a cursory review of Plaintiff's alleged obligation would have revealed that: (a) the "Account Balance," "Account Due," or "Total Due" that Defendant was being asked to collect is the total outstanding balance claimed by the Provider, without application of the Act 6 Reduction; and (b) Defendant was being asked to collect from Plaintiff more than what is allowed under Pennsylvania law.

55.     More importantly, upon information and belief, Defendant has deliberately ignored and/or willfully avoided any investigation or inquiry of the underlying debt, as well as the entities

or persons that hired, retained, or engaged Defendant to collect it.

56. Yet, Defendant has failed to institute or maintain any procedures to avoid collecting amounts in excess of the Act 6 Reduction.

57. To the contrary, Defendant has continued to ignore and/or willfully disregard the applicable provisions of the MVFRL.

58. Upon information and belief, Defendant systematically and as a matter of practice, ignores the MVFRL and its Act 6 Reduction.

59. As described herein, Defendant's conduct, as alleged herein, is (and was) clearly deliberate, intentional, reckless, willful, and wanton.

60. As described herein, Defendant's conduct, as alleged herein, is unfair, misleading, deceptive, and unconscionable.

61. Plaintiff has been (and will continue to be) harmed due to Defendant's conduct, as set forth herein.

62. Plaintiff has suffered and will continue to suffer damages due to Defendant's conduct, as set forth herein, including (but not limited to) delaying the resolution of Plaintiff's claims for injuries sustained in the car accident at issue.

## COUNT I
### Violation of Section 1692e of the FDCPA

63. Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

64. Defendant is a "debt collector" as that term is defined under the FDCPA.

65. An attempt to collect upon a debt incurred during the course of personal medical

treatment falls within the scope of the FDCPA.[14]

66.     As described herein, Defendant's actions violate the applicable provisions of the FDCPA.[15]

67.     Defendant's violations with respect to its collection efforts, include (but are not limited to) making false, misleading, and/or deceptive statements concerning consumer's legal obligations, in violation of 15 U.S.C. §§ 1692e(2)(A), 1692e(10).[16]

68.     As a result of Defendant's violations of the FDCPA, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT II**
**Violation of Section 1692f of the FDCPA**

69.     Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

70.     Defendant's violations with respect to its collection efforts, include (but are not limited to) seeking payment of an amount in excess of what Defendant was allowed to collect, in violation of 15 U.S.C. § 1692f(1).[17]

71.     As a result of Defendant's violations of the FDCPA, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT III**
**Violation of Section 1692g of the FDCPA**

72.     Plaintiff hereby incorporates all facts and allegations of this document by reference,

---

[14] See Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521 (E.D.Pa. 1996).

[15] See Hylton v. AmeriFinancial Solutions, LLC, 2018 WL 6044734 (E.D.Pa. 2018).

[16] See Hylton, supra.

[17] See Hylton, supra.

as if fully set forth at length herein.

73.    The letter at issue in this case was sent by Defendant pursuant to the validation of debts portion of the FDCPA, as mandated by 15 U.S.C. § 1692g.

74.    Under Section 1692g, a debt collector has an affirmative obligation to disclose certain information to a consumer in writing no later than five (5) days after the debt collector's first communication with the consumer about the debt, *inter alia*, the amount of the debt.[18]

75.    To comply with Section 1692g(a)(1), a debt collector must convey the amount of the debt correctly and accurately.[19]

76.    Defendant failed to convey the amount of the debt correctly and accurately, in that the "Account Balance," "Account Due," or "Total Due" identified in Defendant's letter was not correct or accurate, because it exceeded what Defendant was permitted to collect from Plaintiff by Pennsylvania law.

77.    Defendant's violations with respect to its collection efforts, include (but are not limited to) failing to correctly state the amount of the debt allegedly owed by Plaintiff, in violation of 15 U.S.C. § 1692g(a)(1).

78.    As a result of Defendant's violations of the FDCPA, Plaintiff has suffered damages in an amount to be determined at trial.

## V.    CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

(a)    A Declaration that Defendant violated the applicable provisions of the

---

[18] See 15 U.S.C. § 1692g(a)(1).

[19] See, e.g., Taylor v. Fin. Recovery Services, Inc., 886 F.3d 212, 215 (2nd Cir. 2018)(observing that a validation notice must "state accurately the amount of the debt under Section 1692g").

FDCPA;

     (b)     An Order enjoining Defendant from any further violations of the FDCPA;

     (c)     Actual damages;

     (d)     Statutory damages;

     (e)     Attorneys' fees and costs; and

     (f)     Such other relief as the Honorable Court shall deem just and appropriate.

## VI.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury as to all issues so triable.

Date: <u>January 27, 2022</u>          Respectfully submitted,
                                  **KALIKHMAN & RAYZ, LLC**

                                  Arkady "Eric" Rayz
                                  1051 County Line Road, Suite "A"
                                  Huntingdon Valley, PA 19006
                                  Telephone:  (215) 364-5030
                                  Facsimile:  (215) 364-5029
                                  E-mail: erayz@kalraylaw.com

                                  Counsel for Plaintiff